IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PIZZA INN, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0221-N |
| | § | |
| | § | |
| BOB CLAIRDAY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Pizza Inn, Inc.'s ("Pizza Inn") Motion for Summary Judgment [15]. For the reasons stated below, the Court grants and denies the motion in part.

### I. ORIGINS OF THE DISPUTE

Pizza Inn is a franchisor of pizza restaurants. Defendant Bob Clairday owned and operated several Pizza Inn restaurants in Arkansas, Louisiana, and Oklahoma. In December 1992, Clairday paid Pizza Inn $1,250,000 for the rights to two Area Developer agreements (the "AD agreements") that covered territory throughout Arkansas. The stated purpose of the AD agreements is for the Area Developer, i.e., Clairday, to promote and develop Pizza Inn restaurants within the designated geographic territory. PI-APP-033–004, PI-APP-023–024. The AD agreements contain a primary term of twenty (20) years, effective from December 2, 1992 to December 1, 2012. The agreements, however, also contain renewal options that permit Clairday to renew for up to two additional five (5) year periods. It is

undisputed that the parties agreed to the first five-year renewal period, extending the AD agreements until December 1, 2017.

The parties now dispute whether Clairday effectively exercised his right to renew for the second five-year period. Pizza Inn brought this declaratory judgment suit seeking a declaration from the Court that the AD agreements between the parties expired on December 1, 2017 and that Clairday has no lawful right to demand a second renewal of the agreements. Clairday counterclaimed, asserting violations of the Arkansas Franchise Practices Act, as well as claims for declaratory judgment and breach of contract. Clairday seeks a declaration from the Court that he has the right to renew and extend the AD agreements for the second five-year period, beyond December 1, 2017. Pizza Inn now moves for summary judgment on its declaratory judgment claim and on all of Clairday's counterclaims.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT DENIES PIZZA INN'S MOTION FOR SUMMARY JUDGMENT ON ITS DECLARATORY JUDGMENT CLAIM

The Court denies Pizza Inn's motion for summary judgment on its declaratory judgment claim because fact issues exist regarding whether Clairday had the right to renew the AD agreements for a second five-year period. The Court also notes at the outset that Pizza Inn and Clairday agree that Texas law governs the AD agreements, as both parties cite to Texas law in support of their respective arguments on contract interpretation, breach, and equitable intervention. Pl.'s Mem. in Supp. at 13–19 [16]; Def.'s Brief in Supp. at 12–13, 20 [39]. The Court will therefore apply Texas law in assessing the parties' breach of contract and declaratory judgment claims.[1]

#### A. *The 2012 Letter Agreement Does Not Limit Clairday to One Renewal Period*

Pizza Inn first argues that the parties executed a 2012 Letter Agreement that clearly and unambiguously limited Clairday to only one five-year renewal and extinguished his right to a second renewal. Pl.'s Mem. in Supp. at 14. The parties allegedly entered into this Letter Agreement to cure Clairday's defaults and allow him to continue serving as an Area Developer. *Id.* Whether the Letter Agreement unambiguously limited Clairday to one renewal period is a question of law, as it concerns contract interpretation. *McLane*

---

[1] Pizza Inn further argues that based on section 32 of the AD agreements, Texas law governs the entire dispute and bars application of another state's substantive laws. Clairday disputes this contention, arguing that section 32 is not so broad as to bar application of Arkansas law. The Court need not decide this issue, however, because even assuming Arkansas law applies, Clairday's claims for violations of the Arkansas Franchise Practices Act ("AFPA") fail as a matter of law.

*Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). The Court's primary objective is to ascertain the intentions of the parties as expressed in the contract. *Id.* (citing *Lopez v. Munos, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex.2000)). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id.* at 378. However, if the language in the contract is subject to two or more reasonable interpretations, then the contract is ambiguous, creating a fact issue as to the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

> The relevant contractual language states:
>
> Steve Link and I appreciated the opportunity to meet with you on Friday, June 15, 2012, to discuss the resolution of your current defaults and the potential renewal of the AD Agreement, which, currently, is set to expire on December 1, 2012. Consistent with that discussion, Pizza Inn is willing to extend the term of the AD Agreement for one additional 5-year period (until December 1, 2017), subject to the following terms and conditions . . . .

PI-APP-04. Pizza Inn argues that this language constituted an agreement by the parties to terminate the AD agreements in December 2017 and extinguish Clairday's right to a second renewal. The Court disagrees. Taken literally, the Letter Agreement only demonstrates Pizza Inn's consent to the first renewal period. The Letter Agreement does not abrogate or even mention the second five-year renewal option and therefore does not reflect that the parties agreed that Clairday could not renew the Agreement for a second five-year term. Accordingly, the Court concludes that the language of the Letter Agreement only reflects Pizza Inn's consent to the first renewal period and does not unambiguously extinguish

Clairday's option to renew for the second five-year term. The Court thus denies Pizza Inn's motion.

### B. Fact Issues Exist Regarding Whether Clairday Forfeited His Right to Renewal Under the AD Agreements

Pizza Inn argues that Clairday failed to abide by the terms of the AD agreements and therefore forfeited his right to renewal. Section 3 of the agreements state that Clairday "shall have the option to extend . . . if Area Developer has remained in compliance" with the terms of the agreements. PI-APP-05, PI-APP-025. Pizza Inn alleges that Clairday defaulted on his contractual obligations in both the original term and the first renewal term and therefore did not remain in compliance. Pl.'s Mem. in Supp. at 15–16. Clairday argues in his response that he remained in compliance and denies that he was in default under the agreements. Def.'s Brief in Supp. at 16. Clairday alleges that the parties disagreed as to when certain balances, interest, and payments were due and that the parties executed the 2012 Letter Agreement to resolve the dispute and clarify his obligations. *Id*. Clairday also cites to Pizza Inn's President, Bob Bafundo's deposition testimony, in which Bafundo acknowledges that he did not know of any defaults or any noncompliance on Clairday's part. BC-APP-069. Accordingly, the Court concludes that there is a genuine issue of material fact as to whether Clairday defaulted under the AD agreements and forfeited his right to renewal. The Court therefore denies Pizza Inn's motion for summary judgment based on any noncompliance or breach of the AD agreements.

### C. Equitable Intervention May Apply to Relax Strict Compliance with the Notice Requirement Under the AD Agreements

Pizza Inn argues that Clairday was required to deliver written notice of his intention to renew no later than June 1, 2017, but that he delivered notice on August 3, 2017, more than two months late. Clairday, however, asks the Court to apply the doctrine of equitable intervention, which permits a court to excuse a party's failure to strictly comply with a condition precedent of a contract. *In re Eldercare Properties Ltd.*, 568 F.3d 506, 519--20 (5th Cir. 2009) (citing *Jones v. Gibbs*, 130 S.W.2d 265, 272 (Tex. 1939)). In *Jones*, the Texas Supreme Court explained that the rule of strict compliance in the exercise of an option to extend or renew is not an inflexible one. 130 S.W.2d at 272. The Court held that in cases of mere neglect in fulfilling a condition precedent, "equity will relieve when [(1)] the delay has been slight, [(2)] the loss to the [other party] small, and [(3)] when not to grant relief would result in such a hardship to the [party] as to make it unconscionable to enforce literally the condition precedent of the [contract]." *Id*.

In *Eldercare*, the 5th Circuit upheld the lower court's application of Texas's equitable intervention doctrine, noting that with regard to the first element, the party gave written notice one month late, which was relatively slight in comparison to the contract's original ten-year term and five-year renewal term. 568 F.3d at 522. Here, Clairday gave written notice two months late. When compared to the contract's original 20-year term and five-year renewal terms, that is quite slight. As to the second element, the 5th Circuit held that the opposing party failed to demonstrate how it would be harmed by allowing equity to intervene

and rejected the opposing party's general argument about the sanctity of property rights. *Id*. Here, Pizza Inn responds to Clairday's equitable intervention argument in a footnote. Pl.'s Reply at 6 n.5. Pizza Inn does not address any of the three factors laid out in *Jones*. Instead, Pizza Inn only generally complains that the Court should not apply equitable intervention in this commercial contract, arguing that the doctrine is limited to contracts involving real property. *Id*. However, nothing in *Jones* or subsequent cases, such as *Eldercare*, expressly limit the doctrine of equitable intervention to the real property context. As in *Eldercare*, the Court finds that such a general contention establishes, at best, "only abstract, *de minimis* harm." 568 F.3d at 522–23. For the third factor, Clairday argues that he has suffered enormous hardship, incurring damages in the amount of $787,511.82 and was forced to close his franchisee restaurant due to his loss of income as an Area Developer. BC-APP-072–73, BC-APP-119. The Court finds that Clairday has established at least a facially valid claim of equitable intervention, but the Court defers ruling on this issue until the conclusion of trial. Accordingly, the Court denies Pizza Inn's motion for summary judgment based on Clairday's failure to provide written notice by June 1, 2017.

### IV. THE COURT DENIES PIZZA INN'S MOTION FOR SUMMARY JUDGMENT ON CLAIRDAY'S COUNTERCLAIMS FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT

Pizza Inn alleges that Clairday does not have standing to assert any claims arising out of the AD agreements because he assigned the revenue and operations of the AD agreements to a corporation in December 1992, when the agreements were first executed. In support of its position, Pizza Inn cites to the deposition testimony of Clairday's accountant, Matt

Knight, who prepares Clairday's tax returns. Knight allegedly confirmed on cross-examination that Clairday assigned the revenue and operations from the AD agreements to BCI Pizza Development, Inc. ("BCI"). PI-SUPP-APP-068–69 [35]. In response, Clairday states that he owns BCI and reports the income from the AD agreements through BCI for tax purposes. Clairday also complains that Knight is not qualified to offer a legal opinion as to the assignment of contractual rights. In his deposition, Knight admitted to never having seen any legal document showing that Clairday assigned the AD agreements to BCI. PI-SUPP-APP-068. Moreover, Knight is an accountant, not a lawyer, and Pizza Inn offers no further proof of the actual content of any alleged assignment agreement. Accordingly, the Court rejects Pizza Inn's argument that Clairday does not have standing.

Pizza Inn also argues that the Court should grant summary judgment on Clairday's declaratory judgment and breach of contract claims because Clairday breached the AD agreements by (1) defaulting, (2) assigning his rights and interests to BCI without Pizza Inn's consent, and (3) failing to provide timely notice of his intent to renew. The Court has already determined that fact issues exist regarding whether Clairday was in default and therefore breached the AD agreements. Likewise, equitable intervention applies to excuse Clairday's late notice. Finally, Pizza Inn fails to establish that Clairday assigned the AD agreements to BCI. Accordingly, the Court denies Pizza's motion for summary judgment on Clairday's counterclaims for declaratory judgment and breach of contract.

# V. THE COURT GRANTS PIZZA INN'S MOTION FOR SUMMARY JUDGMENT ON CLAIRDAY'S COUNTERCLAIMS FOR VIOLATIONS OF THE ARKANSAS FRANCHISE PRACTICES ACT

Clairday brings counterclaims against Pizza Inn for violations of the AFPA. Assuming section 32 of the AD agreements does not bar application of the AFPA, the Court agrees with Pizza Inn that Clairday's claims under the AFPA are untenable. The AFPA only applies to franchisor-franchisee relationships, and the AD agreements are not franchise agreements within the meaning of the statute. Under the AFPA, Clairday must first establish that he is a "franchisee" as defined by the Act. A "franchisee" means a person to whom a franchise is offered or granted. Ark. Code Ann. § 4-72-202(4). A "franchise" means a "written or oral agreement for a definite or indefinite period in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic within an exclusive or nonexclusive territory or to sell or distribute goods or services within an exclusive or nonexclusive territory at wholesale or retail, by lease agreement, or otherwise." *Id*. at § 4-42-202(1)(A).

Clairday argues that he is a franchisee and that the AD agreements are "franchise agreements" because Area Developers have the ability to participate in sales and have responsibilities to service Pizza Inn stores. Def.'s Brief in Supp. at 32. Clairday also alleges that Area Developers are authorized to solicit new franchisees to open restaurants and to provide consulting services and advice. *Id*. at 33. However, case law interpreting the statute notes that the AFPA is not intended to apply to persons who merely solicit or procure sales, and that a person ordinarily needs authority to consummate sales to be considered a

"franchisee." *Stockton v. Sentry Ins.*, 989 S.W.2d 914, 917 (Ark. 1999); *Kent Jenkins Sales, Inc. v. Angelo Bros. Co.*, 804 F.2d 482, 487 (8th Cir. 1986).

As set forth in the AD agreements, Clairday's role as Area Developer is to develop and support other franchisees and to promote the development of Pizza Inn restaurants. PI-APP-003, PI.-APP-023. The AD agreements specifically provide that they are "not a Franchise Agreement permitting the operation of a Pizza Inn restaurant or the use of Proprietary Marks." PI-APP-004, PI-APP-024. Section 6 additionally states that the agreements are "not a franchise license agreement and Area Developer has no right to use Company's trademarks, service marks or trade secrets or to operate a Pizza Inn restaurant by virtue of this Agreement." PI-APP-006, PI-APP-026. Moreover, the AD agreements require Pizza Inn's approval before Clairday can approve or close deals with new franchisees. PI-APP-009. Thus, Clairday does not possess the requisite authority; he functions more as a solicitor or procurer of new franchisees, which Arkansas courts have held does not amount to a franchisor-franchisee relationship. *Stockton*, 989 S.W.2d at 917 (finding no franchisor-franchisee relationship where party only had authority to "solicit and procure" new insurance contracts). Clairday also argues that he is a franchisee because he provides services to Pizza Inn restaurants. The statute, however, contemplates the sale or distribution of goods or services at wholesale or retail. Ark. Code Ann. § 4-72-202(1)(A). Clairday does not sell or distribute goods or services at wholesale or retail. Accordingly, the Court holds that Clairday cannot show that his claims fall under the purview of the AFPA and therefore grants summary judgment in favor of Pizza Inn on Clairday's claims for violations of the AFPA.

## Conclusion

The Court denies Pizza Inn's motion for summary judgment on its claim for declaratory judgment. The Court likewise denies Pizza Inn's motion as to Clairday's claims for breach of contract and declaratory judgment. The Court, however, grants Pizza Inn's motion for summary judgment on Clairday's claims for violations of the AFPA.

Signed February 8, 2019.

_David C. Godbey_
David C. Godbey
United States District Judge